In the Matter of Disciplinary Proceedings Against
Michael J. Collins, Attorney at Law:

Office of Lawyer Regulation, Complainant,

v.

Michael J. Collins, Respondent.

Supreme Court

*No. 03–2688–D. Decided February 12, 2004.*

2004 WI 9

(Also reported in 674 N.W.2d 566.)

¶ 1. PER CURIAM.  We review the stipulation

filed by Attorney Michael J. Collins and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12.[1]

¶ 2. On October 13, 2003, the OLR filed a complaint in this court alleging eight separate counts of misconduct against Attorney Collins involving three separate client matters. Collins did not file an answer but instead, he and the OLR filed a stipulation in which Collins admitted the facts and misconduct as alleged in the OLR's complaint and agreed to the level of discipline the OLR sought in this disciplinary matter—a 60–day suspension of Collins' license to practice law in this state.

¶ 3. We approve the stipulation and adopt the stipulated facts and conclusions regarding Collins' eight counts of misconduct as alleged in the OLR's complaint. We determine that the seriousness of Attorney Collins' misconduct warrants suspension of his license to practice law for a period of 60 days.

¶ 4. Michael J. Collins was admitted to practice law in Wisconsin in 1977 and most recently he practiced in Madison. Collins has previously received two public reprimands for disciplinary violations.[2]

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process was substantially restructured. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from the Board of Attorneys Professional Responsibility (BAPR) to the Office of Lawyer Regulation and the supreme court rules applicable to the lawyer regulation were also revised in part. Some of the conduct underlying this case arose prior to October 1, 2000. However, the complainant in this case will be referred to as the OLR. All references to supreme court rules will be to the current version of the supreme court rules unless otherwise noted.

[2] In June 1989 Collins consented to a public reprimand for his misconduct in failing to timely file answers to an opposing

¶ 5. The OLR's disciplinary complaint alleged that Collins had committed eight separate counts of misconduct. The alleged misconduct to which he now stipulates includes two counts of neglect, two trust account violations, two instances of failing to cooperate with the OLR investigations, one count of disobeying a court order, and one count of failure to keep a client reasonably informed about a hearing in her case. Collins admits to the facts as alleged in the OLR complaint. Briefly summarized, the allegations are these:

## CLIENT R.S.

¶ 6. The OLR complaint alleged, and Collins now stipulates, that Collins represented R.S. in a divorce action in Rock county. R.S.'s wife, J.S.S. had been involved in an auto accident which damaged a 1988 station wagon. After that accident, J.S.S. began using the parties' 1995 van. J.S.S. subsequently received an insurance settlement check—in R.S.'s name—in the amount of $3300 for damage to the 1988 station wagon. J.S.S. received that settlement check before January 10, 1997, the date on which a temporary order hearing in the divorce action was held. As of that date, the

party's interrogatories or otherwise pursue his client's legal action, neglecting a legal matter, stating to his client that the interrogatories had been answered when Collins had not done so, misrepresenting the status of the lawsuit to his client, and signing, though not negotiating, a settlement agreement, failing to cooperate with the BAPR investigation and neglecting a legal matter entrusted to him.

In January 1995 Collins again consented to a public reprimand for his misconduct in failing to promptly inform his client about developments in the client's case and for failing to timely pursue an appeal or motion for reconsideration on his client's behalf.

monthly payments of $436.80 for the 1995 van for November and December 1996 had not been made to the lien holder on the van.

¶ 7.  After the January 10, 1997, hearing, the circuit court ordered that the $3300 proceeds from the insurance settlement for the damage to the 1988 station wagon be placed in Collins' trust account; also, Collins was directed to contact the lien holder on the van and make arrangements to "catch up" on the past due payments and to find out if the lien holder would agree, after it received the $3300 cash payment from Collins' trust account, to reduce the principal balance and renegotiate the loan on the van so as to permit a lower monthly payment.

¶ 8.  On January 18, 1997, the attorney representing J.S.S. in the divorce action forwarded the $3300 insurance settlement check J.S.S. had received to Collins. Although Collins knew the circuit court's order required him to deposit that check into his trust account and to then make arrangements with the lien holder on the van, Collins failed to deposit the check into his trust account.

¶ 9.  In addition, Collins failed to instruct his client, R.S., to come to his office to endorse that settlement check so that Collins could then deposit it in his trust account and make the van payments.

¶ 10.  On April 9, 1997, R.S. received a Notice of Right to Cure Default from the lien holder regarding the van. R.S. faxed that document to Collins and called him but Collins did not return the call. During the latter half of April 1997, R.S. made several additional unsuccessful attempts to contact Collins. R.S. was finally able to reach Collins on April 30, 1997.

¶ 11.   On May 9, 1997, R.S. learned that he needed to endorse the settlement check and he then did so on that date.

¶ 12.   Subsequently, in November of 1999, R.S. filed a grievance against Collins with the BAPR (OLR's predecessor agency). BAPR and Collins corresponded regarding that grievance throughout February of 2000.

¶ 13.   On April 27, 2000, BAPR staff wrote to Collins asking for additional information and a response no later than May 11, 2000. Collins, however, failed to respond.

¶ 14.   On May 16, 2000, BAPR staff again wrote to Collins and asked for his response; again, he did not respond.

¶ 15.   BAPR staff subsequently referred the grievance investigation to its district investigative committee. While that investigation was pending, this state's lawyer regulation system was restructured and the disciplinary agency was renamed the Office of Lawyer Regulation (OLR).

¶ 16.   On February 28, 2001, Collins met with the OLR's district investigative committee and was asked to provide additional information regarding his communication with the attorney who had represented J.S.S. in the divorce action. Collins also promised to provide additional information regarding his failure to respond to the BAPR staff investigative letters. Collins agreed that he would supply all the information no later than March 7, 2001. Collins, however, failed to provide any further information to the investigative committee regarding R.S.'s grievance.

¶ 17.   This course of conduct resulted in Counts One through Five as alleged in the OLR's complaint. Those counts of misconduct to which Collins now stipulates are:

A.    Count One. By failing to deposit the insurance settlement check into his trust account, Collins failed to hold in trust, property of clients or third persons in his possession in connection with a representation or when acting in a fiduciary capacity in violation of SCR 20:1.15(a).

B.    Count Two. By failing to promptly deliver the funds to the lien holder, despite the court's temporary order, Collins failed to, upon receiving funds or other property in which a client or third person has an interest, promptly notify the client or third person in writing, and failed to promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive, in violation of SCR 20:1.15(b).

C.    Count Three. By taking four months to deposit the insurance settlement check instead of timely depositing the money into his trust account and by failing during that time to make past due payments to his client's lien holder, Collins failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

D.    Count Four. By failing to follow the court's temporary order requiring him to deposit an insurance settlement check into his trust account, and make arrangements with the parties' bank to catch up on any past due payments, Collins knowingly disobeyed an obligation under the rules of a tribunal, in violation of SCR 20:3.4(c).

E.    Count Five. By failing to respond to two requests for information from the BAPR staff and by failing to provide information to the district

446

committee as agreed, Collins failed to cooperate with the investigative committee; Collins failed to cooperate with the OLR in the investigation, prosecution and disposition of a grievance; and by failing to fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct, Collins engaged in professional misconduct, in violation of SCR 21:03(4) (1998), SCR 22.07(3) (1998), SCR 22.04(1), SCR 21.15(4), and SCR 22.03(2) (October 1, 2000).

## CLIENT M.T.

¶ 18. The OLR complaint further alleged, and Collins now stipulates, that in May 1998, M.T. retained Collins as counsel in a divorce action then pending in the Dane County Circuit Court. Collins was the fourth attorney M.T. had retained in that divorce action.

¶ 19. Opposing counsel in the divorce action subsequently filed a motion seeking a firm date and a time for completion of a property exchange between M.T. and her former husband. On October 29, 1998, the circuit court scheduled a hearing on that motion for Monday, November 9, 1998. Collins, however, intentionally did not timely inform his client, M.T., of that scheduled hearing because he believed that her presence at that hearing might be disruptive. It was not until Friday, November 6, 1998, that Collins mailed M.T. notice of the hearing then scheduled for the next Monday; he knew that that notice would probably not reach M.T. in time for her to arrange to be present at the hearing the following Monday.

¶ 20. M.T. in fact did not appear at that November 9, 1998, hearing. Because she was not present at that hearing, Collins did not raise certain issues she wanted

447

addressed. In M.T.'s absence, the circuit court set a date and time for M.T.'s husband to retrieve his personal property from M.T.'s home.

¶ 21. This course of conduct as alleged in the OLR's complaint resulted in Count Six to which Collins now stipulates:

    A.    Count Six. By deliberately not informing a client of a post-divorce hearing Collins failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

## CLIENT N.M.

¶ 22. The OLR alleged, and Collins now stipulates, that he was appointed to act as guardian of 16-year-old N.M. in Sauk County. Upon N.M.'s 18th birthday in November 1999, Collins was required to file his final guardian report detailing the funds collected and bills paid in the matter. When Collins' final report was overdue, the circuit court scheduled a hearing for December 1999. Collins failed to appear at that hearing even though he had notice of it.

¶ 23. By early 2000 when Collins still had not filed his final report regarding N.M.'s guardianship, the circuit court scheduled another hearing; again, Collins failed to appear.

¶ 24. On April 4, 2000, the circuit court sent Collins another letter. When his final report in the N.M. guardianship still had not been filed by May 3, 2000, the circuit court reported Collins' neglect of his duties as guardian in N.M.'s case to BAPR. Collins finally filed his report in late May of 2000.

¶ 25. On May 25, 2000, a BAPR investigator contacted Collins and asked him to respond to this grievance by June 14, 2000. Collins did not respond by that deadline.

¶ 26. BAPR staff then sent Collins a follow-up letter at the new address he had provided; Collins was given a new deadline of July 3, 2000, to respond to the grievance concerning the N.M. guardianship. Collins did not respond until August 2, 2000.

¶ 27. This course of conduct as alleged in the OLR's complaint resulted in Counts Seven and Eight to which Collins now stipulates.

A. Count Seven. By failing to timely file a guardianship report and by failing to attend two hearings, Collins failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

B. Count Eight. By failing to timely respond to requests for information by the BAPR, Collins failed to cooperate with the board and the administrator in the investigation, prosecution, and disposition of a grievance; and failed to fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct in violation of SCR 21.03(4) (1998) and SCR 22.07(2) (1998).

¶ 28. As noted, Collins has now stipulated to these eight counts of misconduct as alleged by the OLR in its complaint. He admits the facts and the misconduct as alleged, and he agrees that a 60–day suspension of his license to practice law in this state is an appropriate sanction for that misconduct.

¶ 29. We approve the stipulation and determine that the seriousness of Attorney Collins' misconduct warrants the suspension of his license to practice law

for 60 days. We view Collins' actions as serious violations of the Rules of Professional Conduct governing lawyers in this state. Accordingly,

¶ 30.   IT IS ORDERED that the license of Michael J. Collins to practice law in Wisconsin is suspended for a period of 60 days, effective March 18, 2004.

¶ 31.   IT IS FURTHER ORDERED that Michael J. Collins comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.